IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RUTH C. COLEMAN, | ) | 8:13CV82 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CORRECT CARE SOLUTIONS, | ) | |
| Medical Dept; Douglas County | ) | |
| Correction, | ) | |
| | ) | |
| Defendant. | ) | |

    This matter is before the court on remand from the Eight Circuit Court of Appeals for consideration of whether Plaintiff Ruth Coleman has stated a plausible race-discrimination claim under 42 U.S.C. § 1981. *See Coleman v. Correct Care Solutions*, 559 F.App'x 601 (8th Cir. 2014) (per curiam) (holding that Coleman adequately raised a race-discrimination claim by attaching EEOC complaint containing race-discrimination allegations to her pleadings). For the reasons discussed below, the court finds that Coleman's pro se filings, taken together, state a plausible race-discrimination claim.

## I. BACKGROUND

### A. Summary of Complaint and Pre-Service Screening

    Coleman filed her Complaint on March 12, 2013, alleging two former coworkers, Valarie Jass and Brenda Tacke, engaged in discriminatory conduct against her. (Filing No. 1.) Coleman is black, and she was 67 years old at the time she filed her Complaint. (*See* Filing No. 9 at CM/ECF p. 5, charge of discrimination filed with the Nebraska Equal Opportunity Commission.)

Coleman explained in her Complaint that, prior to the events leading to her filing this action, she fractured her foot and later developed severe pain in her hips. Coleman's injury resulted in her being late for work because she had to sit on ice packs each morning and take pain pills. Coleman always called the office to inform staff she would be 20 minutes late. Coleman alleged Jass "never said a word for months regarding [Coleman] being tardy." (*Id.* at CM/ECF p. 3.)

In October 2010, Jass asked Coleman into her office for a meeting. Tacke was also present. During this meeting, Jass yelled at Coleman "about [her] tardiness and days missed." (*Id.* at CM/ECF p. 4.) Jass allegedly made the following statements during her meeting with Coleman: (1) "That's why half the population are in jail now, for taking drugs!"; (2) "[Ma]ybe you can't even perform your duties on drugs."; and (3) "Maybe you are too old [to] be working for this company anyway." (*Id.* at CM/ECF p. 4.) Following the meeting, a coworker was consoling Coleman when Jass screamed at her to get to work and stop gossiping. Moments later, Jass asked Coleman to gather her belongings and leave the building. Coleman asked if she was fired, and Jass responded that she was not. (*Id.*) Coleman decided to retire in December 2010, though she had planned on working an additional one or two years. (*Id.* at CM/ECF pp. 6-7.)

As relief, Coleman asked for Tacke "to be brought to court under oath and tell the truth. This being Valarie Jass made age discrimination remark to me!" (*Id.* at CM/ECF p. 5.) Coleman also asked to be compensated by Correct Care Solutions because the incident with Jass forced her to retire. (*Id.*)

In the portion of the civil complaint form asking for information pertaining to the court's jurisdiction, Coleman wrote: "I believe Valarie Jass is a racist, reason —two other employees she harassed till they quit (one in tears) were Black." (*Id.* at CM/ECF p. 9.) It is worth noting that Coleman did not allege she is black in either her

2

Complaint or Amended Complaint. This fact was not apparent until Coleman filed her charge of discrimination on October 18, 2013. (*See* Filing No. 9.)

The court conducted a pre-service screening of Coleman's Complaint on August 8, 2013. (*See* Filing No. 6.) The court construed the Complaint to raise only a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. *See Coleman*, 559 F.App'x at 602. The court determined it could not tell whether Coleman had exhausted her administrative remedies or whether her claim was timely filed. Accordingly, the court ordered Coleman to either "file a copy of her right-to-sue notice" from the Equal Employment Opportunity Commission ("EEOC") or "amend her complaint to allege that she filed suit within 90 days of her receipt of the right-to-sue notice." (Filing No. 6 at CM/ECF pp. 3-4.)

**B.    Summary of Amended Complaint and Show-Cause Order**

Coleman filed an Amended Complaint on August 20, 2013, in which she substituted Correct Care Solutions as the defendant. (Filing No. 7.) Coleman generally repeated the allegations contained in her Complaint regarding her meeting with Jass, and Jass' subsequent request that Coleman leave the building. Coleman reiterated that she had been discriminated against on the basis of age.

On October 11, 2013, the court ordered Coleman to "show either that she filed suit within 90 days of receipt of a right-to-sue notice [from the EEOC], or that equitable or exceptional circumstances exist that warrant tolling of the 90-day period." (Filing No. 8 at CM/ECF p. 1.)

**C.    Response to Show-Cause Order and Case Dismissal**

On October 18, 2013, Coleman filed correspondence with the court asking that this matter be allowed to proceed. (Filing No. 9.) Coleman described the harm she

suffered as a result of Jass' actions and generally repeated allegations regarding her meeting with Jass. In addition, Coleman included allegations suggesting Jass' actions may have been motivated by racial animus: "I was 65 at time my coworker was 73, but white. Two other black also were harassed enough too [sic] simply quit." (*Id.* at CM/ECF p. 2 (emphasis in original).) In addition, Coleman wrote, "Unlawful to make age discrimination remarks. I was 65 at time, but my coworker was 73, but white. Two other Black also quit after what I call plain harassment by Valarie Jass." (*Id.* at CM/ECF p. 3.)

Also on October 18, 2013, Coleman filed a copy of her right-to-sue notice (dated January 12, 2012) and the charge of discrimination she filed with the EEOC. (*See* Filing No. 9 at CM/ECF pp. 4-5.) In Coleman's charge of discrimination, Coleman stated that, prior to Jass being hired as an administrator, Coleman was allowed to arrive to work late "to control pain caused by [her] disability." (*Id.* at CM/ECF p. 5.) On August 27, 2010, Jass informed her that if she was late again, her employment would be terminated. Coleman asked if her arrival time could be changed to 8:30 a.m. "to accommodate [her] disability," and Jass said, "no." Jass allegedly stated, "With the drug you are taking for pain and your age, you should not be working for CCS. . . The reason half of the jail population is incarcerated is for drugs." (*Id.*) Thereafter, Jass required Coleman to sign a form stating her tardiness was discussed, and then Jass and Tacke escorted Coleman out of the building. (*Id.*) Coleman stated she believed she had been discriminated against on the basis of age, race, and disability. (*Id.*)

On December 16, 2013, the court dismissed this action because Coleman failed to file suit within 90 days of her receipt of a right-to-sue notice, and because she failed

4

to show that equitable or exceptional circumstances exist that warrant tolling of the 90-day time period.[1]

**D.     Appeal and Remand**

Coleman appealed the court's dismissal of this action to the Eighth Circuit Court of Appeals.  (*See* Filing No. 16.)  On June 5, 2014, the Eighth Circuit Court of Appeals determined that Coleman's pro se filings, taken together, adequately raised a claim of race discrimination under 42 U.S.C. § 1981.  However, the court "express[ed] no opinion as to the sufficiency or plausibility of Coleman's § 1981 claim."  *Coleman*, 559 F.App'x at 602.  The Eighth Circuit remanded the matter to this court "for consideration of whether Coleman has stated a plausible race-discrimination claim under 42 U.S.C. § 1981 and for any further proceedings as necessary."

## II. DISCUSSION

Here, the court must determine whether Coleman has stated a plausible race-discrimination claim under 42 U.S.C. § 1981.  Section 1981, as amended by the Civil Rights Act of 1991, provides a cause of action for discrimination in the employment relationship.

A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in her complaint.  *See Swierkiewicz v. Sorema N.A.*, 534

---

[1]A plaintiff must commence an action alleging an employer's violations of the ADEA, Title VII of the Civil Rights Act of 1964, or the Americans with Disabilities Act ("ADA") within 90 days of the plaintiff's receipt of a right-to-sue letter from the EEOC, if such a letter is issued.  *See* 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. § 2000e-5(f)(1) (Title VII); 42 U.S.C. § 12117(a) (applying the 90-day statute of limitations to ADA claims).

<a>
<p></p>
</a>

<p>
</p>

<p></p>

U.S. 506, 511-512 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). However, the elements of a prima facie case are relevant to a plausibility determination. *See* Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also* Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

In assessing whether Coleman has pled enough facts to make entitlement to relief plausible, the court looks to the elements of a prima facie case of discrimination as guidance. "To establish a prima facie case for race discrimination, 'a plaintiff must show (1) [s]he is a member of a protected class, (2) [s]he met h[er] employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently).'" *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014) (quoting *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012)).

Coleman has alleged she is a member of a protected class and she suffered an adverse employment action. When read together, Coleman's pro se filings allege that she was scolded and disciplined by Jass. In addition, Coleman has alleged she was meeting her employer's legitimate expectations prior to the time she was disciplined by Jass. While Coleman acknowledges that she was often late for work, she alleges that Jass "never said a word for months regarding [her] being tardy." (*See* Filing No. 1 at CM/ECF p. 3.)

6

Finally, Coleman has alleged facts suggesting an inference of discrimination. When read together, Coleman's pro se filings allege that Jass scolded Coleman, stated Coleman may be too old to work, accused Coleman of gossiping in front of Coleman's coworkers, and forced her to leave work for the day. Coleman alleged that her 73-year-old "white" coworker was not harassed in a similar manner. In addition, Coleman alleged that two other black employees were also harassed. The court determines these allegations are sufficient to state a plausible race-discrimination claim.

In light of the foregoing, Coleman's section 1981 claims may proceed to service of process. However, the court cautions Plaintiff that this is only a preliminary determination based solely on the allegations of Coleman's Complaint (Filing No. 1), Amended Complaint (Filing No. 7), correspondence dated October 18, 2013 (Filing No. 9), and charge of discrimination (*id.* at CM/ECF p. 5). This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

IT IS THEREFORE ORDERED that:

1. To obtain service of process on Defendant, Plaintiff must complete and return the summons form that the Clerk of the Court will provide. The Clerk of the Court shall send one summons form and one USM-285 form to Plaintiff, together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of the Court.

2. Upon receipt of the completed forms, the Clerk of the Court will sign the summons forms, to be forwarded with a copy of the Complaint (Filing No. 1), Amended Complaint (Filing No. 7), and Response (Filing No. 9) to the U.S. Marshal for service of process. The Marshal shall serve the summons and the Complaint and Amended Complaint without payment of costs or fees. Service may be by certified mail pursuant to Federal Rule of Civil Procedure 4 and Nebraska law in the discretion

of the Marshal. The Clerk of the Court will copy the Complaint and Amended Complaint, and Plaintiff does not need to do so.

3. Federal Rule of Civil Procedure 4 requires service of the complaint on a defendant within 120 days of filing the complaint. However, because in this order Plaintiff is informed for the first time of these requirements, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

4. Plaintiff is hereby notified that failure to obtain service of process on a defendant within 120 days of the date of this order may result in dismissal of this matter without further notice as to such defendant. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

5. The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "**December 29, 2014**: Check for completion of service of summons."

6. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of her current address at all times while this case is pending. Failure to do so may result in dismissal.

DATED this 28th day of August, 2014.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.